In re the TRUST OF JAMES BERNARD SPENCER IRREVOCABLE TRUST.

Kathleen M. Mosloski, et al., petitioners, Respondents,

v.

Kevin Spencer, et al., Appellants.

No. A12–0565.

Court of Appeals of Minnesota.

Dec. 24, 2012.

Review Denied Feb. 27, 2013.

power of appointment could be exercised only in his last will and testament. In 2009, four days before he died, Spencer executed a document in which he designated his three daughters as beneficiaries but not three grandchildren who are the children of Spencer's pre-deceased son. Those three grandchildren commenced this action to challenge the validity of Spencer's appointment. Their challenge hinges on whether the document purporting to be Spencer's appointment is his last will and testament. The district court concluded that the document is a valid appointment because Spencer executed it according to the formalities required of a will. We conclude, however, that the document is not Spencer's last will and testament, notwithstanding the formalities that were observed in its execution. Therefore, we reverse and remand.

Bradley A. Kletscher, Sheldon M. Clark, Barna, Guzy & Steffen, Ltd., Minneapolis, MN, for respondents.

Silas Danielson, Jill K. Baker, Blethen, Gage & Krause, PLLP, Mankato, MN, for appellants.

Considered and decided by JOHNSON, Chief Judge; PETERSON, Judge; and CRIPPEN, Judge.*

## OPINION

JOHNSON, Chief Judge.

In 1996, James Bernard Spencer established an irrevocable trust for the benefit of his wife, children, and grandchildren. In the trust instrument, he reserved to himself the power to appoint trust income and assets to designated beneficiaries. According to the trust instrument, the

## FACTS

James Bernard Spencer (hereinafter Spencer) and his wife, Blossom Mary Spencer, had four children, who were born between 1946 and 1959: Charles J. Spencer, Charlene A. Spencer, Kathleen M. Mosloski, and Christine M. Koch.

In 1977, Spencer executed a document entitled, "Will," in which he declared that he was revoking all other wills. In the will, Spencer stated his intention to leave certain personal property to his wife and the residue of his estate to a revocable trust.

In 1996, Spencer established the James Bernard Spencer Irrevocable Trust "for the benefit of himself and his spouse (income only), his children, and the issue of his deceased children." Spencer appointed Charles Spencer and Kathleen Mosloski to

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

be co-trustees. The trust instrument declares that the trust is irrevocable and "that there is no right in [Spencer] to amend or modify its terms." But Spencer reserved to himself certain powers, including the power to direct major investment decisions, to remove and replace trustees, and to remove and replace trust assets with other assets of equal value. Spencer also reserved "unto himself a Testamentary Power of Appointment exercisable in the Last Will and Testament of Grantor to appoint the Trust Income and Corpus to a designated class of beneficiaries."

The trust corpus originally consisted of approximately 150 acres of farmland, which was valued at approximately $290,000. The trust instrument allowed Spencer, during his lifetime, to occupy the homestead and to receive all of the net income of the trust. The trust instrument allows his wife, Blossom Spencer, to occupy the homestead and to receive the net income of the trust, if she survives him, which she has. The trust instrument prohibits the trustees from disposing of the corpus of the trust while either Spencer or his wife is alive. After both Spencer and his wife have died, the trust instrument requires the trustees to convey a 44–acre parcel of real estate to Koch and to distribute the remaining principal to Spencer's "children, or their issue by right of representation, in equal shares."

Spencer's eldest child, Charles Spencer, died in 2001. He was survived by his wife and three adult children, Kevin C. Spenc-er, James R. Spencer, and Joseph J. Spencer (hereinafter appellants). In January 2003, Spencer appointed Koch to serve as co-trustee with Mosloski; Koch accepted the appointment in August 2005.

In August 2009, Spencer became ill, was admitted to the Mayo Clinic, and was diagnosed with esophageal cancer. On August 16, 2009, while still an in-patient at the Mayo Clinic, Spencer signed a document that had been prepared by a certified public accountant (who does not identify herself as an attorney). The document is entitled, "Testamentary Power of Appointment / James Bernard Spencer Irrevocable Trust." The document, in its entirety, provides as follows:

As per ARTICLE III, Section 2, I, James Bernard Spencer exercise my right to designate the following class of beneficiaries to the Trust.

Beneficiaries will be as follows, 1/3 of the trust to Kathleen M. Mosloski or her heirs, 1/3 of the trust to Christine M. Koch or her heirs, 1/3 of the trust less $90,000 to Charlene A. Spencer. The $90,000 will be distributed ($45,000 each) to Ms. Mosloski and Ms. Koch in addition to their 1/3 shares.

Since my son, Charles J. Spencer has pre-deceased me and his children and heirs have received adequate funds previously, they are specifically excluded from this agreement.

Spencer's signature was witnessed by Mosloski and notarized by a friend of Koch. Spencer died four days later.[1]

---

1. Mosloski and Koch introduced evidence into the summary judgment record concerning the process that culminated in Spencer's execution of the document. Blossom Spencer stated in an affidavit that she and her husband decided during the winter of 2008 and 2009 to exclude appellants from the group of beneficiaries of the trust. She stated further that they made that decision because they "had adequately provided for Charles Spenc-er and his children previously," although the record does not indicate how they did so. Blossom Spencer also stated that she and her husband asked Mosloski and Koch to find a professional who could draft the papers necessary to exclude appellants from the group of beneficiaries of the trust, although she does not indicate when they made that request. In March 2009, Spencer sent an e-mail message to Mosloski and Koch in which he asked

In April 2011, Mosloski and Koch petitioned the district court for an order declaring that appellants were "expressly and specifically excluded" as beneficiaries of the trust and have no interest in the trust. Appellants responded by alleging that the document executed by Spencer on August 16, 2009, is invalid as a testamentary power of appointment; that Spencer's execution of that document is an invalid means of modifying the trust; and that Spencer was subject to undue influence when he signed the document. Appellants also sought an accounting. Appellants further alleged that Spencer lacked capacity to execute the document, but they later waived that argument.

In November 2011, the parties filed cross-motions for summary judgment. In January 2012, the district court granted the motion filed by Mosloski and Koch in part, concluding that the document executed by Spencer on August 16, 2009, is a valid exercise of the testamentary power of appointment that Spencer reserved to himself in the trust instrument. The district court denied both motions with respect to the undue-influence claim, and the parties later stipulated to the dismissal of that claim. The district court denied the summary judgment motion filed by appellants in its entirety. Kevin, James, and Joseph Spencer now appeal the district court's judgment in favor of Mosloski and Koch.

## ISSUE

Was Spencer's execution of the August 16, 2009 document a valid exercise of the testamentary power of appointment that he reserved to himself in the trust instrument?

## ANALYSIS

A district court must grant a motion for summary judgment if the evidence demonstrates "that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. A genuine issue of material fact exists if a rational trier of fact, considering the record as a whole, could find for the non-moving party. *Frieler v. Carlson Mktg. Grp., Inc.*, 751 N.W.2d 558, 564 (Minn.2008). This court applies a *de novo* standard of review to the district court's legal conclusions on summary judgment, and we view the evidence in the light most favorable to the non-moving party. *RAM Mut. Ins. Co. v. Rohde*, 820 N.W.2d 1, 6 (Minn.2012).

### A.

■ Appellants argue that the district court erred by concluding that Spencer's execution of the August 16, 2009 document is a valid exercise of the testamentary power of appointment that he had reserved to himself in the trust instrument. The district court's reasoning is as follows: "All of the formal requirements for executing a will under the law have been met in the drafting of the [document]. The document was in writing, signed by decedent, and signed by two witnesses who witnessed decedent's signature. Nothing more was required of decedent."

Appellants do not challenge the district court's determination that the August 16, 2009 document complies with the statutory formalities required of a will. *See* Minn. Stat. § 524.2–502 (2012). Rather, appellants focus on the requirement in the trust

whether they had found a lawyer "to change trust," but the e-mail does not indicate what type of change was desired. We believe that all of this evidence is irrelevant to the issue that must be decided in this appeal. It appears that the parties presented this body of evidence because of its relevance to appellants' undue-influence claim, which was pending at the time of the parties' cross-motions for summary judgment.

instrument that Spencer exercise his testamentary power of appointment in his last will and testament. They contend that "any testamentary power must be exercised only in the prescribed mode and manner as designated in the document creating the power." For this proposition, appellants cite section 502.64 of the Minnesota Statutes. The second sentence of that statute provides, "When a power of appointment is exercisable only by will, a donee may not exercise it by deed." Minn. Stat. § 502.64 (2012). This statutory provision governs this appeal and is the starting point of our analysis.

The pertinent language of the trust instrument is in article III, section 2, which provides, "Grantor reserves unto himself a Testamentary Power of Appointment exercisable in the Last Will and Testament of Grantor to appoint the Trust Income and Corpus to a designated class of beneficiaries chosen by the Grantor . . . ." This language satisfies the condition in the first clause of the second sentence of section 502.64. Thus, Spencer's testamentary power of appointment may be exercised only in his last will and testament and may not be exercised in a deed. *See id.* Accordingly, we must determine whether the document that Spencer executed on August 16, 2009, was a will or a deed, as the legislature understood those terms.

■ We first must discern the meaning of the terms "will" and "deed." "Our primary goal in statutory interpretation is to give effect to the intent of the Legislature." *Swanson v. Brewster,* 784 N.W.2d 264, 284 (Minn.2010). "In construing the language of a statute, we give words and phrases their plain and ordinary meaning." *Emerson v. School Bd. of Indep. Sch. Dist. 199,* 809 N.W.2d 679, 682 (Minn.2012). To

identify the plain meaning of a particular word used in a statute, it is appropriate to refer to the common usage of the word. *See Gassler v. State,* 787 N.W.2d 575, 586 n. 11 (Minn.2010); *Swanson,* 784 N.W.2d at 274; *In re Phillips' Trust,* 252 Minn. 301, 306, 90 N.W.2d 522, 527 (1958). Furthermore, it is appropriate to refer to courts' usage of a word because the legislature is presumed to be aware of the existing caselaw when it enacts legislation. *See Goodyear Tire & Rubber Co. v. Dynamic Air, Inc.,* 702 N.W.2d 237, 244 (Minn.2005). Moreover, in this particular context, it is appropriate to refer to the common-law meaning of words that are incorporated into a statute because the legislature has determined that the common law concerning powers of appointment applies, unless the legislature has modified the common law by statute. *See* Minn.Stat. § 502.62 (2012).

The legislature has not defined the word "deed," either in chapter 502 or any other chapter. The common contemporary usage of the word "deed" suggests a document that conveys an interest in real property. *See, e.g., Bank Midwest, N.A. v. Lipetzky,* 674 N.W.2d 176, 177 (Minn.2004) (referring to parties who conveyed farmland through "deed"). But the term also has a broader meaning, which may apply to an interest in any form of property. At common law, a deed was defined as "any written instrument that is signed, sealed,[2] and delivered and that conveys some interest in property." *Black's Law Dictionary* 475 (9th ed.2009). Because the term later gained wide usage in the conveyance of real estate, the term deed " 'has come to mean in popular acceptance any formal conveyance for the transfer of land or of an interest therein.' " *Id.* (quoting Ray An-

2. The legislature has since abolished the requirement of private seals and has declared that "all written instruments formally re-

quired by law to be sealed shall be equally effective for all purposes without a seal." Minn.Stat. § 358.01 (2012).

drews Brown, *The Law of Personal Property* § 46, at 118–19 (2d ed.1955)). Consequently, it may be " 'difficult to determine whether the word is used in the first and original sense, or whether it connotes a formal instrument of the type ordinarily employed for the conveyance of land.' " *Id.* (quoting Brown, *supra*, § 46, at 118–19). But when section 502.64 was enacted, the word "deed" was understood to mean simply an "instrument in writing, on paper or parchment, duly executed and delivered, containing some transfer, bargain, or contract." *Webster's New Int'l Dictionary* 684 (2d ed.1946); *see also* 1943 Minn. Laws ch. 322, § 4, at 439. This definition is instructive because it provides the meaning of the word "deed" that prevailed at the time the legislature selected the word. *See Utah v. Evans*, 536 U.S. 452, 475–76, 122 S.Ct. 2191, 2205, 153 L.Ed.2d 453 (2002); *State v. Milliman*, 802 N.W.2d 776, 779 (Minn.App.2011).

The word "will," on the other hand, generally is defined as "a document by which a person directs his or her estate to be distributed upon death." *Black's Law Dictionary* 1735 (9th ed.2009). In addition, the legislature has defined the word "will" in a non-exhaustive manner, as follows: " 'Will' includes codicil and any testamentary instrument which merely appoints an executor or revokes or revises another will." Minn.Stat. § 524.1–201(58) (2012).

### B.

Appellant's argument—that the document Spencer executed on August 16, 2009, is not a will—comports with common sense because the document does not state that it is a will and does not otherwise resemble a will. In response, Mosloski and Koch contend that the August 16, 2009 document is a will even though it does not resemble a typical will. Mosloski and

Koch cite to the statutory definition of a will, which includes "any testamentary instrument which . . . revokes or revises another will." Minn.Stat. § 524.1–201(58).

To prevail on their argument that the August 16, 2009 document is a will, Mosloski and Koch would need to establish at least three propositions. First, Mosloski and Koch would need to establish that Spencer executed the August 16, 2009 document with the intent required for the execution of a will. In Minnesota, a document purporting to be a will must reflect the maker's testamentary intent. *Thomas v. Singer Sewing Mach. Co.*, 105 Minn. 88, 90, 117 N.W. 155, 156 (1908). The term "testament" generally refers to a "formal declaration, usually in writing, of a person's wishes as to the disposal of his property after his death." XVII *The Oxford English Dictionary* 829 (2d ed.1989). Thus, testamentary intent refers to the maker's intent that the instrument dispose of property and "be ambulatory, serving no purpose and having no effect until after his death." *Thomas*, 105 Minn. at 90, 117 N.W. at 156; *see also Black's Law Dictionary* 1735 (9th ed.2009) (defining will as "legal expression of an individual's wishes about the disposition of his or her property after death").

Second, Mosloski and Koch would need to establish that the August 16, 2009 document is a codicil or an "instrument which . . . revokes or revises another will," Minn. Stat. § 524.1–201(58), specifically, the will that Spencer executed in 1977. Mosloski and Koch do not contend that the document is a codicil but do contend that it supplements the 1977 will. A will may be revoked "by executing a subsequent will that revokes the previous will or part expressly or by inconsistency." Minn.Stat. § 524.2–507(a)(1) (2012). A testator is presumed to have intended a subsequent will to replace rather than supplement a

previous will if the subsequent will makes a complete disposition of the testator's estate. *Id.*, § 524.2–507(c) (2012). If this presumption arises and is not rebutted, the prior will is revoked in its entirety. *Id.* On the other hand, a testator "is presumed to have intended a subsequent will to supplement rather than replace a previous will if the subsequent will does not make a complete disposition of the testator's estate." *Id.*, § 524.2–507(d) (2012). If this presumption arises and is not rebutted, the prior will is revoked only to the extent that it is inconsistent with the subsequent will, and both wills are fully operative to the extent that they are not inconsistent. *Id.*[3]

Third, Mosloski and Koch would need to establish that Spencer's execution of the August 16, 2009 document satisfied the statutory requirements concerning the formalities of a will: that it was (1) in writing, (2) signed by the testator, and (3) signed by two witnesses. *See* Minn.Stat. § 524.2–502. The district court found that these requirements were satisfied, and appellants do not challenge that part of the district court's analysis.

### C.

■ We need not resolve each step of this analysis because Mosloski's and Koch's argument fails at the first step, which requires testamentary intent. To determine whether Spencer had testamentary intent when he executed the August 16, 2009 document, we look primarily to the language of the document. *See Thomas*, 105 Minn. at 90, 117 N.W. at 156. As an initial matter, the title of the document, which refers to a "power of appointment," indicates that the document is associated with property in Spencer's irrevocable trust, not with property in his estate. In addition, the document does not indicate that Spencer's appointment is effective upon his death. The first sentence of the document expresses Spencer's purpose in the present tense, and no language in the document states or implies that the appointment of beneficiaries is effective upon Spencer's death. Furthermore, the document describes itself as an "agreement," which is a term more often associated with a trust or a deed. *See, e.g., In re Pamela Andreas Stisser Grantor Trust*, 818 N.W.2d 495, 497 (Minn.2012) (referring to document creating trust as "agreement"); *Bruggeman v. Jerry's Enterprises, Inc.*, 591 N.W.2d 705, 708–09 (Minn.1999) (explaining that "deed" is final expression of parties' "agreements"). Moreover, the signature line identifies Spencer as the "Grantor," which is a term used in connection with trusts but not with wills. *See* Minn.Stat. § 524.2–502 (requiring that will be signed by "testator"). The only aspect of the August 16, 2009 document that

---

**3.** We assume without deciding that the law allows the August 16, 2009 document to be a will even though it does not dispose of property in Spencer's estate upon his death, which is the primary purpose of a will. *See Black's Law Dictionary* 1735 (9th ed.2009). The law plainly allows a will to be a means of exercising a testamentary power of appointment. *See* Minn.Stat. § 502.64; *see also* Restatement (Third) of Property: Wills & Other Donative Transfers § 3.3 cmt. a (2011). But it is unclear whether a document that only exercises a testamentary power of appointment of trust property, and does not dispose of property in a person's estate, may be considered a will. Minnesota's statutory definition of a will is narrower than that of the uniform law on which it was based. *Compare* Minn.Stat. § 524.1–201(58) *with* Unif. Probate Code § 1–201(57). And the Restatement provision that defines will to include the exercise of a testamentary power of appointment is broader than both the uniform law and the previous version of the Restatement. *Compare* Restatement (Third) of Property: Wills & Other Donative Transfers § 3.3 cmt. a, *with* Unif. Probate Code, § 1–201(57); Restatement (Second) of Property: Donative Transfers § 33.1 (1992).

might reflect testamentary intent is the word "testamentary" in the title of the document, but the remainder of the title uses a term ("power of appointment") that is borrowed from Spencer's trust instrument. A document does not exhibit testamentary intent merely because its maker executed it in anticipation of death. *See Brown v. Atwater*, 25 Minn. 520, 522 (1879). Thus, we conclude that Spencer did not have the testamentary intent necessary for a will when he executed the August 16, 2009 document.

The foregoing analysis leads to the conclusion that the August 16, 2009 document is a "deed," not a "will," as those words were understood by the legislature. *See* Minn.Stat. § 502.64. We acknowledge that Spencer likely intended in August 2009 to appoint trust principal and income to certain beneficiaries of the irrevocable trust. But he intended in December 1996 to require that such an appointment be exercised only in his last will and testament. Thus, in 2009, Spencer was required by the terms of the trust instrument and by section 502.64 to make that appointment in his last will and testament. The August 16, 2009 document must be characterized as a deed because it does not have the character of a will and does not reflect the intent necessary for a will. If we were to characterize the August 16, 2009 document as a will, we would not be faithful to the law concerning wills and would unduly diminish the significance of the second sentence of section 502.64. Thus, Spencer's execution of the August 16, 2009 document is not a valid exercise of the testamentary power of appointment that he reserved to himself in the trust instrument.

## DECISION

The district court erred by entering summary judgment in favor of Mosloski and Koch. The case is remanded for entry of summary judgment in appellants' favor.

**Reversed and remanded.**